**HUNTON ANDREWS KURTH LLP**
Ann Marie Mortimer (State Bar No. 169077)
amortimer@HuntonAK.com
Jason J. Kim (State Bar No. 221476)
kimj@HuntonAK.com
Brandon Marvisi (State Bar No. 329798)
bmarvisi@HuntonAK.com
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627
Telephone:  (213) 532-2000
Facsimile:  (213) 532-2020

Attorneys for Plaintiff
Meta Platforms, Inc. (f/k/a Facebook, Inc.)

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| FACEBOOK, INC., a Delaware corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ALEXANDER ALEXANDROVICH SOLONCHENKO, also known as "Solomame,"<br><br>　　　　　Defendant. | CASE NO.:  3:21-CV-08230-LB<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT**<br><br>Date:　　　December 8, 2022<br>Time:　　　9:30 a.m.<br>Ctrm:　　　B, 15th Floor<br>Judge:　　Laurel Beeler<br><br>Complaint Filed:  October 21, 2021 |

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

3:21-CV-08230-LB

## NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on December 8, 2022 at 9:30 a.m., or as soon thereafter as this matter may be heard before Magistrate Judge Laurel Beeler in Courtroom B of the above-titled court located at 450 Golden Gate Avenue, 15th Floor, San Francisco, California, Plaintiff Meta Platforms, Inc. (f/k/a Facebook, Inc.) will, and hereby does, move this Court for the entry of a default judgment against Defendant Alexander Alexandrovich Solonchenko.

This Motion is made pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure on the grounds that the Clerk has entered default against Defendant based on his failure to respond to the Complaint, the Court has jurisdiction over the claims and parties, all of the factors set forth in *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986) favor granting default judgment, Defendant's actions have damaged Plaintiff, and a permanent injunction is necessary to prevent the irreparable harm Defendant's scheme has caused (which, by virtue of the default, now must be deemed admitted by Defendant).

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently-filed Declaration of Andrew Herter, all pleadings and papers on file, and upon such oral argument as may be made at the hearing on this Motion.

Dated:  October 21, 2022          **HUNTON ANDREWS KURTH LLP**

By:    */s/ Ann Marie Mortimer*
Ann Marie Mortimer
Jason J. Kim
Brandon Marvisi
Attorneys for Plaintiff
Meta Platforms, Inc. (f/k/a Facebook, Inc.)

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

## **Table of Contents**

**Page(s)**

I.     INTRODUCTION .................................................................................... 1

II.    STATEMENT OF FACTS ........................................................................ 1

    A.   Background On Meta's Products ................................................... 2

    B.   Facebook's Terms Of Service ....................................................... 3

    C.   Background On Phone Number Enumeration Scraping ................... 3

    D.   Plaintiff's Anti-Scraping And Enforcement Efforts ...................... 4

    E.   Defendant Agreed To Facebook's Terms ..................................... 4

    F.   Background On RaidForums ......................................................... 4

    G.   Defendant Used Automated Means To Access And Scrape Data From Facebook In Violation Of Facebook's Terms ................... 4

    H.   Defendant's Acts Harmed Plaintiff............................................... 6

    I.   The Filing Of This Action And Subsequent Entry Of Default....... 6

III.   DEFAULT JUDGMENT IS WARRANTED ............................................ 6

    A.   This Court Has Jurisdiction To Enter Default Judgment .............. 7

        1.   This Court Has Subject Matter Jurisdiction Over The Claims .................. 7

        2.   Defendant Consented To The Personal Jurisdiction Of This Court .......... 7

        3.   This Court Has Specific Personal Jurisdiction Over Defendant................ 9

        4.   Defendant Was Properly Served .............................................. 13

    B.   The *Eitel* Factors Weigh Heavily In Favor Of Granting Default Judgment.... 14

        1.   Plaintiff Will Be Prejudiced Absent Entry Of Default Judgment............ 14

        2.   Plaintiff's Breach Of Contract Claim Is Meritorious And Well-Founded ................................................................ 14

        3.   The Amount Of Money At Stake Supports A Default Judgment ........... 16

        4.   There Is No Dispute Of Any Material Facts........................... 16

        5.   There Is No Evidence Of Excusable Neglect In The Record ................. 16

        6.   There Is No Likelihood Of A Decision On The Merits.......................... 17

IV.    PLAINTIFF IS ENTITLED TO A PERMANENT INJUNCTION ................. 17

V.     CONCLUSION ................................................................................... 19

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*,
503 F.3d 544 (6th Cir. 2007) ................................................................. 11

*Amazon.com, Inc. v. Expert Tech Rogers Pvt. Ltd.*,
2021 WL 4461601 (N.D. Cal. Sept. 22, 2021) ....................................... 17

*Baskin-Robbins Franchising LLC v. Pena*,
2020 WL 2616576 (N.D. Cal. May 7, 2020) .................................... passim

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .......................................................................... passim

*Butler v. Adoption*,
2004 WL 7338759 (N.D. Cal. May 3, 2004) ........................................ 11

*CollegeSource, Inc. v. AcademyOne, Inc.*,
653 F.3d 1066 (9th Cir. 2011) .............................................................. 10

*Craigslist, Inc. v. Naturemarket, Inc.*,
694 F. Supp. 2d 1039 (N.D. Cal. 2010) ............................................ 7, 14

*Craigslist, Inc. v. Realworks Group LLC*,
2009 WL 10692489 (N.D. Cal. Oct. 29, 2009) ..................................... 17

*Eitel v. McCool*,
782 F.2d 1470 (9th Cir. 1986) .......................................................*passim*

*In re Facebook Biometric Info. Privacy Litig.*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016) ................................................ 15

*Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*,
2021 WL 5707741 (N.D. Cal. Oct. 21, 2021) ........................... 13, 14, 15

*Facebook, Inc. v. ILikeAd Media Int'l Co. Ltd.*,
2022 WL 2289064 (N.D. Cal. Feb. 1, 2022), *report and
recommendation adopted as modified*, 2022 WL 2289058 (N.D. Cal.
Mar. 15, 2022) ....................................................................................... 8

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

3:21-CV-08230-LB

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT

*Facebook, Inc. v. Power Ventures, Inc.*,
  252 F. Supp. 3d 765 (N.D. Cal. 2017)......................................................17, 18

*Facebook, Inc. v. Rankwave Co.*,
  2019 WL 8895237 (N.D. Cal. Nov. 14, 2019).......................................8, 11

*Facebook, Inc. v. Sahinturk*,
  2022 WL 1304471 (N.D. Cal. May 2, 2022)................................................8

*Facebook, Inc. v. Sluchevsky*,
  2020 WL 5823277 (N.D. Cal. Aug. 28, 2020)...................................*passim*

*Fair Hous. of Marin v. Combs*,
  285 F.3d 899 (9th Cir. 2002) ........................................................................1

*Flintkote Co. v. Gen. Accident Assurance Co. of Canada*,
  2004 WL 1977220 (N.D. Cal. Sept. 7, 2004).............................................10

*Giotta v. Ocwen Fin. Corp.*,
  2015 WL 8527520 (N.D. Cal. Dec. 11, 2015) ...........................................10

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*,
  972 F.3d 1101 (9th Cir. 2020) ......................................................................9

*Google, Inc. v. Eolas Techs. Inc.*,
  2014 WL 2916621 (N.D. Cal. June 24, 2014) ...........................................11

*Gucci Am., Inc. v. Wang Huoqing*,
  2011 WL 31191 (N.D. Cal. Jan. 3, 2011)...................................................10

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*,
  326 U.S. 310 (1945)........................................................................................9

*Karimi v. Golden Gate Sch. of Law*,
  361 F. Supp. 3d 956 (N.D. Cal. 2019)........................................................15

*LeGarie v. Nurse*,
  2021 WL 5771144 (N.D. Cal. Dec. 6, 2021) .............................................12

*M/S Bremen v. Zapata Off-Shore Co.*,
  407 U.S. 1 (1972)............................................................................................7

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
   858 F.2d 509 (9th Cir. 1988) ................................................................................. 7

*Naked Biome v. Halverson*,
   2019 WL 2183378 (N.D. Cal. Feb. 5, 2019), *report and
   recommendation adopted sub nom. Biome v. Halverson*, 2019 WL
   2183367 (N.D. Cal. Feb. 25, 2019) ........................................................................ 9

*Nissan Motor Co. v. Nissan Comput. Corp.*,
   89 F. Supp. 2d 1154 (C.D. Cal. 2000) .................................................................. 13

*Old Republic Home Prot. Co. v. CHW Grp. Inc.*,
   2010 WL 11703270 (N.D. Cal. Dec. 29, 2010) ...................................................... 9

*Panavision Int'l, L.P. v. Toeppen*,
   141 F.3d 1316 (9th Cir. 1998) ................................................................................ 9

*Roth v. Garcia Marquez*,
   942 F.2d 617 (9th Cir. 1991) ................................................................................ 12

*Stackla, Inc. v. Facebook Inc.*,
   2019 WL 4738288 (N.D. Cal. Sept. 27, 2019) ..................................................... 19

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
   240 F.3d 832 (9th Cir. 2001) ............................................................................... 18

*Super Micro Computer, Inc. v. R Assocs., Inc.*,
   2021 WL 7451269 (N.D. Cal. Mar. 15, 2021) ....................................................... 1

*Sustainable Ranching Partners, Inc. v. Bering Pac. Ranches Ltd.*,
   2017 WL 4805576 (N.D. Cal. Oct. 24, 2017) ....................................................... 12

*Tech. LED Intellectual Prop., LLC v. Revogi, LLC*,
   2019 WL 2716610 (N.D. Cal. June 27, 2019) ........................................................ 7

*Vector Media S., LLC v. Starline Tours of Hollywood, Inc.*,
   2021 WL 4913488 (C.D. Cal. Aug. 4, 2021) ......................................................... 18

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
   715 F.3d 716 (9th Cir. 2013) ............................................................................. 9, 12

*Yelp Inc. v. Catron*,
   70 F. Supp. 3d 1082 (N.D. Cal. 2014) ............................................................ 12, 13

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

iv

**Statutes**

28 U.S.C. § 1332 ............................................................................................ 7

Code of Civil Procedure of Ukraine Article 501 Part 6 .......................... 6, 13

**Other Authorities**

Fed. R. Civ. P. 54(c) .................................................................................... 17

Fed. R. Civ. P. 55(b) ...................................................................................... 6

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   **INTRODUCTION**

Between January 2018 and September 2019, Defendant Alexander Alexandrovich Solonchenko, also known as "Solomame," ("Defendant" or "Solonchenko") violated Facebook's Terms of Service by using automated means to scrape publicly accessible information associated with approximately 178 million Facebook users.  ECF No. 1 ("Complaint") ¶¶ 1, 3.  Solonchenko used a computer program to deliver automated requests to Meta's computers, meanwhile pretending to be multiple Android devices connected to Facebook's messaging mobile app.  *Id.* Beginning in October 2020, Solonchenko sold data on RaidForums.com ("RaidForums").  *Id.* ¶ 2.  RaidForums is an online marketplace that has been used to sell and distribute scraped, stolen, and leaked data.  *Id.*  Between 2020 and 2021, Solonchenko stole or scraped data from Ukraine's largest commercial bank, Ukraine's largest private delivery service, and a French data analytics company.  *Id.*  In May 2021, Solonchenko also sold the data that he had scraped from Meta between January 2018 and September 2019.  *Id.*  Solonchenko's conduct violated Facebook's Terms of Service.  *Id.*  Meta now seeks injunctive relief.

On August 25, 2022, the clerk entered Defendant's default.  ECF No. 20 ("Clerk's Notice of Entry of Default").  Based on Defendant's failure to answer the Complaint, Plaintiff now seeks default judgment.  As described below, this Court has jurisdiction to enter default, all of the factors set forth in *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986) favor granting default judgment, and Plaintiff is entitled to a permanent injunction.  A default judgment should be entered.

## II.   **STATEMENT OF FACTS**

"After an entry of default, well-pled allegations in the complaint are deemed true, except for the amount of damages."  *Super Micro Computer, Inc. v. R Assocs., Inc.*, 2021 WL 7451269, at *2 (N.D. Cal. Mar. 15, 2021), *report and recommendation adopted*, 2021 WL 7448612 (N.D. Cal. Apr. 14, 2021) (citing *Fair Hous. of Marin v.*

3:21-CV-08230-LB

*Combs*, 285 F.3d 899, 906 (9th Cir. 2002)).  Accordingly, the Court can and should "accept[] the following allegations as true."  *Baskin-Robbins Franchising LLC v. Pena*, 2020 WL 2616576, at *1 (N.D. Cal. May 7, 2020).

### A.   Background On Meta's Products

Facebook is a social networking website and mobile application that enables its users to create their own personal profiles and connect with each other on their personal computers and mobile devices.  Complaint ¶ 12.  Plaintiff owns and operates several products in addition to Facebook, including Instagram and Messenger (collectively "Meta's Products").  *Id.*

To access Facebook and view certain user profiles, Meta requires that each user create a Facebook account.  Complaint ¶ 13.  To create a Facebook account, Meta requires each user to register with a unique username and password.  *Id.*  Registered users can create user profiles and include information about themselves, including their email address, phone numbers, and date of birth.  *Id.* ¶ 14.  Registered Facebook users can make connections on Facebook by becoming "Friends" with other Facebook users.  *Id.*  Facebook provides its users with control over how to customize their profiles and how much personal information to include in their profile.  *Id.* ¶ 15.  In addition, Facebook's privacy settings provide users with control over how much profile information is viewable publicly and searchable, to other Facebook users, or to the users' Friends.  *Id.*

Facebook Messenger ("Messenger") is a messaging application and platform that allows direct messaging, video and voice calls, and the ability to share photos, videos, audio, and files, among other features.  Complaint ¶ 16.  A Facebook account is required to use Messenger.  *Id.*

Between June 2015 through September 2019, Messenger included functionality through which users could use contacts from mobile devices and identify their friends and others associated with those phone numbers.  Complaint ¶ 17.  This functionality was limited by a user's privacy settings; that is, a user with a matching phone number

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

would be identified only if that user's privacy settings permitted them to be searched for by phone number by the searching user. *Id.* Since September 2019, Messenger no longer includes functionalities that return one-to-one lists of matched phone numbers. *Id.*

### B.   Facebook's Terms Of Service

Everyone who uses Facebook must agree to Facebook's Terms of Service (the "Terms") that govern access to, and use of Facebook and the Facebook Platform. Complaint ¶ 18. Among other things, the Terms prohibit users from: (1) doing anything unlawful, misleading, or fraudulent; or (2) accessing or collecting data from Meta's Products using automated means without permission. *Id.* ¶¶ 19-20.

### C.   Background On Phone Number Enumeration Scraping

"Phone number enumeration scraping" is the process of using automation to (a) manufacture auto-generated lists of phone numbers and (b) upload the numbers to websites with phone lookup or finder features, in order to scrape information associated with that phone number. Complaint ¶ 25.

Phone number enumeration scraping in the context of Messenger generally involved the following steps:

a.      A computer program would be used to auto-generate lists of phone numbers. These lists could be curated based on telephone area code and target densely populated areas that have a high number of mobile phone numbers. *Id.* ¶ 26.

b.      Various simulated mobile devices (also known as Android or Apple iOS emulators) were programmed to mimic real mobile devices when connected to Meta computers in order to use functionalities enabling users to be looked up by phone number, which were restricted to logged-in authenticated Messenger users. *Id.*

c.      The emulators were used to submit the phone numbers from the auto-generated list to Meta computers. *Id.* If a phone number on the auto-generated list matched a real phone number listed on a user's account, and if the user's phone

searchability setting allowed "everyone" to search for the user by phone number, that user's Facebook ID and name were returned and could be scraped.  *Id.*

### D.      Plaintiff's Anti-Scraping And Enforcement Efforts

Plaintiff took several measures to limit phone number enumeration scraping. Complaint ¶ 42.  And, after discovering Solonchenko engaged in phone number enumeration scraping, Plaintiff disabled his Facebook and Instagram accounts and revoked his access to Facebook and Meta's Products.  *Id.* ¶ 43.

### E.      Defendant Agreed To Facebook's Terms

Between January 7, 2015 and October 13, 2021, Solonchenko created and used at least two Facebook accounts, and therefore, agreed to the Terms.  Complaint ¶ 27. Additionally, Solonchenko created and controlled a Facebook Page and at least five Instagram accounts.  *Id.* ¶¶ 29-30.

### F.      Background On RaidForums

RaidForums is an online marketplace where users of the forum openly discuss the collection and sale of scraped, stolen, and leaked data.  Complaint ¶ 31; Ex. 5. RaidForums was started in 2015 by a user with the online aliases "Omnipotent," and "Omni," who still operates the forum as an administrator.  *Id.*  As of August 2, 2021, RaidForums had over 640,000 registered users participating in discussion topics dedicated to gaming, scraped, stolen, and leaked data, and hacking.  *Id.*  For example, in July 2021, public reports stated that scraped user profile information (name, gender, email, and telephone number) for 700 million LinkedIn users was offered for sale on RaidForums.  *Id.*

### G.      Defendant Used Automated Means To Access And Scrape Data From Facebook In Violation Of Facebook's Terms

Beginning no later than January 2018, Solonchenko used automated means to access Meta computers and to scrape data from Meta without Plaintiff's permission, in violation of the Terms.  Complaint ¶ 32; Exs. 6 and 7.  Solonchenko used phone

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1   number enumeration scraping to scrape data of approximately 178 million Facebook

2   users. *Id.*; Ex. 7.

3       On or about October 1, 2020, Solonchenko created an account on RaidForums

4   using the username "Solomame." Complaint ¶ 34. On January 18, 2021,

5   Solonchenko changed his username on RaidForums from "Solomame" to

6   "barak_obama." *Id.*; Ex. 2.

7       On December 1, 2020, Solonchenko created a post on RaidForums in which he

8   wrote that he scraped data from Facebook in 2018 and offered to sell the complete

9   dataset or portions of the dataset. Complaint ¶ 38; Ex. 6. Specifically, Solonchenko

10  wrote, "I collected this database during 2018y, it's unique and nobody sales exact that

11  leak (*sic*). I collected it by myself scanning fb day-by-day during a year (*sic*)." *Id.*

12  Solonchenko invited those interested in purchasing the Facebook dataset to contact

13  him on Telegram at @not_a_wolf. *Id.* Solonchenko also suggested that "Omni," the

14  RaidForums' admin, could serve as the escrow agent to facilitate the sale of the

15  Facebook data. *Id.* Between December 3, 2020 and January 3, 2021, Solonchenko

16  promoted the sale of this scraped data on RaidForums. *Id.*

17      Further, on May 24, 2021, Solonchenko created a post on RaidForums in which

18  offered to sell a dataset of about 180 million Facebook users. Complaint ¶ 41. More

19  specifically, Solonchenko wrote, "I also have some other DBs, consumers lists (*sic*),

20  B2B dbs all over the world, phone dbs, [and] non-public fb data (180m for USA)."

21  *Id.* In fact, the dataset contained publicly accessible phone numbers and Facebook

22  user IDs for approximately 178 million Facebook users, predominantly located in the

23  United States. *Id.* Solonchenko used phone number enumeration scaping to obtain

24  this dataset prior to September 2019. *Id.*

25      Additionally, since October 1, 2020, Solonchenko has used RaidForums to sell

26  and distribute data obtained from various other businesses, including Nova Poshta,

27  which is the largest private delivery company in Ukraine, PrivatBank, which is the

28

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

3:21-CV-08230-LB

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT

largest commercial financial institution in Ukraine, and Acuity Data, a French marketing company.  Complaint ¶¶ 35-37, 40.

### H.   Defendant's Acts Harmed Plaintiff

Solonchenko's violations of the Terms have harmed Plaintiff.  Complaint ¶ 44. Plaintiff has suffered damages attributable to the efforts and resources it has used to investigate, remediate, and respond to Solonchenko's conduct.  *Id.* ¶ 45.

### I.   The Filing Of This Action And Subsequent Entry Of Default

On October 21, 2020, Plaintiff filed this action against Defendant.  *See* Complaint.  Because Defendant resides in Ukraine, Plaintiff initiated service through the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 (the "Hague Convention").  On August 1, 2022, Plaintiff received a certificate of service from the Ukrainian Authority, noting that a court summons was delivered on February 11, 2022.  ECF No. 18 ("Proof of Service of Complaint").  Defendant thereafter failed to appear in court at his February 15, 2022 hearing without a valid reason and despite being "duly notified of the date, time and place of the court session scheduled."  *Id.* As a result, and in accordance with Part 6 of Article 501 of the Code of Civil Procedure of Ukraine, the "documents to be served by order of a foreign court shall be considered as served."  *Id.*  Because Defendant did not respond to the Complaint by his March 4, 2022 deadline, Plaintiff requested entry of default against Defendant on August 25, 2022.  ECF No. 19 ("Request for Default").  The Clerk entered default that same day.  Clerk's Notice of Entry of Default.  Plaintiff now moves for the entry of a default judgment against Defendant.

## III.   DEFAULT JUDGMENT IS WARRANTED

A district court may grant default judgment after the Clerk of the Court has entered a default.  Fed. R. Civ. P. 55(b).  When a default judgment is sought against a non-appearing party, a court must examine its subject matter jurisdiction over the causes of action and its personal jurisdiction over the non-appearing party, including

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

6

1    whether the "procedural requirement of service of summons" has been satisfied.

2    *Tech. LED Intellectual Prop., LLC v. Revogi, LLC*, 2019 WL 2716610, at *2 (N.D.

3    Cal. June 27, 2019).  Then, to determine whether default judgment should be entered,

4    courts consider the factors set forth in *Eitel*, 782 F.2d at 1471–72:

> (1) the possibility of prejudice to the plaintiff, (2) the merits
> of plaintiff's substantive claim, (3) the sufficiency of the
> complaint, (4) the sum of money at stake in the action, (5) the
> possibility of a dispute concerning material facts, (6) whether
> the default was due to excusable neglect, and (7) the strong
> policy underlying the Federal Rules of Civil Procedure
> favoring decisions on the merits.

9    Here, jurisdiction is proper, and the *Eitel* factors favor default judgment.

      **A.**    **This Court Has Jurisdiction To Enter Default Judgment**

          **1.**    **This Court Has Subject Matter Jurisdiction Over The Claims**

This Court has diversity jurisdiction under 28 U.S.C. § 1332 over the breach of

contract cause of action alleged in the Complaint because complete diversity exists

and the amount in controversy exceeds $75,000.  Complaint ¶¶ 4-5, 7, 45, 53.

          **2.**    **Defendant Consented To The Personal Jurisdiction Of This Court**

Defendant consented to personal jurisdiction in this Court when he agreed to

and became bound by the Terms, and thereby agreed to the forum selection clause in

the Terms requiring him to submit to this Court's personal jurisdiction.  Complaint ¶¶

8, 27, 29-30, 47-48.  A forum selection clause is construed as consent by the parties to

the personal jurisdiction of the courts of the selected forum.  *Craigslist, Inc. v.

Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1052 (N.D. Cal. 2010).  Forum selection

clauses are *prima facie* valid and specifically enforceable unless the party opposing

the clause clearly shows "that enforcement would be unreasonable or unjust, or that

the clause was invalid for such reasons as fraud or overreaching."  *Manetti-Farrow,

Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) (quoting *M/S Bremen v.

Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Here, the Terms contain a forum selection clause requiring consent to this Court's personal jurisdiction.[1]  That forum selection clause provides:

> If you are a consumer, the laws of the country in which you reside will apply to any claim, cause of action, or dispute you have against us that arises out of or relates to these Terms or the Facebook Products, and you may resolve your claim in any competent court in that country that has jurisdiction over the claim.  In all other cases, you agree that the claim must be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County.  *You also agree that you submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim*, and that the laws of the State of California will govern these Terms and any claim, without regard to conflict of law provisions.

*See* Declaration of Andrew Herter ("Herter Decl.") Ex. A, paragraph 4 (emphasis added).

Defendant agreed to the Terms every time he created each of his two Facebook accounts and five Instagram accounts—and therefore agreed to litigate all claims brought by Plaintiff in this Court.  Complaint ¶¶ 8, 27, 29-30, 47-48; *see* Herter Decl. Ex. A; *Facebook, Inc. v. Sluchevsky*, 2020 WL 5823277, at *3 (N.D. Cal. Aug. 28, 2020) (applying similar forum selection clause and finding "Defendants' use of Facebook constituted agreement to the TOS, including its forum selection clause"); *Facebook, Inc. v. ILikeAd Media Int'l Co. Ltd.*, 2022 WL 2289064, at *3 (N.D. Cal. Feb. 1, 2022), *report and recommendation adopted as modified*, 2022 WL 2289058 (N.D. Cal. Mar. 15, 2022) (enforcing similar forum selection clause).  As courts in

---

[1] In *Facebook, Inc. v. Rankwave Co.*, 2019 WL 8895237, at *4 (N.D. Cal. Nov. 14, 2019), the court analyzed a forum selection clause found in a prior version of Facebook's Terms of Service that is not at issue here.  *See also Facebook, Inc. v. Sahinturk*, 2022 WL 1304471, at *3 (N.D. Cal. May 2, 2022) (citing *Rankwave*, 2019 WL 8895237).  The court reasoned that the forum selection clause contained a parenthetical defining "claim" to mean claims that consumers have against Facebook, and did not include claims Facebook has against consumers.  The version of Facebook's Terms of Service applicable in the instant action does not include such a definition of "claim" in the forum selection clause.

1    this very District have held, a non-appearing defendant's assent to the terms of a

2    forum selection clause is presumed in a default posture where it is well-pled, as it is

3    here. *Sluchevsky*, 2020 WL 5823277 at *2 n.1. Accordingly, this Court has

4    jurisdiction.

5            **3.    This Court Has Specific Personal Jurisdiction Over Defendant**

6            Although Defendant's assent to the forum selection clause is sufficient to confer

7    jurisdiction, specific jurisdiction exists based on Defendant's contacts with this forum.

8    "Personal jurisdiction over a nonresident defendant is proper if permitted by a state's

9    long-arm statute[2] and if the exercise of that jurisdiction does not violate federal due

10   process." *Naked Biome v. Halverson*, 2019 WL 2183378, at *3 (N.D. Cal. Feb. 5,

11   2019), *report and recommendation adopted sub nom. Biome v. Halverson*, 2019 WL

12   2183367 (N.D. Cal. Feb. 25, 2019) (citing *In re W. States Wholesale Nat. Gas*

13   *Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013)). To satisfy due process, a

14   defendant must have "minimum contacts" with the forum such that the assertion of

15   jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'"

16   *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326

17   U.S. 310, 316 (1945). "Where, as here, the motion is based on written materials rather

18   than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of

19   jurisdictional facts.'" *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz*

20   *Choloma, S.A.*, 972 F.3d 1101, 1106 (9th Cir. 2020); *see also Old Republic Home*

21   *Prot. Co. v. CHW Grp. Inc.*, 2010 WL 11703270, at *3 (N.D. Cal. Dec. 29,

22   2010), *report and recommendation adopted*, 2011 WL 13373813 (N.D. Cal. Feb. 2,

23   2011) (jurisdictional allegations accepted as true after entry of default).

---

26   [2] California's long-arm statute authorizes specific personal jurisdiction over a

27   nonresident defendant to the full extent permitted by the Due Process Clause of the

28   United States Constitution. *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316,

     1320 (9th Cir. 1998).

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

3:21-CV-08230-LB

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Specific jurisdiction exists whenever a defendant: (1) performs some act or consummates some transaction which purposefully avails himself of the privilege of conducting activities in the forum so as to invoke the benefits and protections of the state's laws; (2) the claim arises out of or relates to those activities; and (3) the exercise of jurisdiction is reasonable. *Flintkote Co. v. Gen. Accident Assurance Co. of Canada*, 2004 WL 1977220, at *2 (N.D. Cal. Sept. 7, 2004). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Giotta v. Ocwen Fin. Corp.*, 2015 WL 8527520, at *3 (N.D. Cal. Dec. 11, 2015). Once the plaintiff does so, a defendant must set forth a "compelling case" that the exercise of jurisdiction would be unreasonable. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1079 (9th Cir. 2011).

a)      Defendant Purposefully Availed Himself Of California

Defendant purposefully availed himself of the benefits and protections of California. "To show purposeful availment, a plaintiff must show that the defendant 'engage[d] in some form of affirmative conduct allowing or promoting the transaction of business within the forum state.'" *Gucci Am., Inc. v. Wang Huoqing*, 2011 WL 31191, at *5 (N.D. Cal. Jan. 3, 2011). "Parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985) (quotations omitted).

Here, from January 7, 2015 to October 13, 2021, Defendant created, controlled, and maintained numerous Facebook and Instagram accounts, thereby entering into various contracts with Meta, a California entity. Complaint ¶¶ 27-30. These contracts—individually and collectively—created a continuing relationship and obligation with a California resident (Meta) that establishes purposeful availment. *See Sluchevsky*, 2020 WL 5823277, at 3-4 (creation and use of Facebook accounts to maliciously collect user information amounted to purposeful availment).

3:21-CV-08230-LB

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1    Individually, each contract created a continuing relationship and ongoing

2    obligations between the contracting parties—*e.g.*, Plaintiff to provide products and

3    services to Defendant, and Defendant to comply with the Terms.  Moreover, in each

4    contract with Plaintiff, Defendant consented to California law in the choice-of-law

5    provision in the Terms, which demonstrates he has chosen to avail himself of the

6    benefits and protections of California's laws.  Complaint ¶¶ 8, 27, 30; *see* Herter Decl.

7    Ex. A; *Google, Inc. v. Eolas Techs. Inc.*, 2014 WL 2916621, at *3 (N.D. Cal. June 24,

8    2014) (defendant's agreement to California choice-of-law provision evidenced that

9    defendant availed itself of benefits and protections of California law); *see also Burger*

10   *King*, 471 U.S. at 482 (choice-of-law provision "reinforced [defendant's] deliberate

11   affiliation with the forum State and the reasonable foreseeability of possible litigation

12   there"); *Rankwave*, 2019 WL 8895237, at *6 (finding specific jurisdiction based, in

13   part, on contacts with California created by defendant's acceptance of forum selection

14   clause and choice-of-law provision in Facebook's Terms despite finding that provision

15   did not bind defendant).

16   Collectively, the "large number of agreements between [D]efendant[] and

17   [Plaintiff] supports [Plaintiff's] assertion that [D]efendant[] ha[s] purposefully availed

18   [himself] of the benefits and protections of doing business in California."  *Butler v.*

19   *Adoption*, 2004 WL 7338759, at *7 (N.D. Cal. May 3, 2004); *see also Air Prods. &*

20   *Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 551 (6th Cir. 2007) ("[T]he parties

21   did not engage in a one-time transaction, but in a continuing business relationship that

22   lasted many years. . . . Such contacts are not 'random,' 'fortuitous,' or 'attenuated,'

23   but are the result of deliberate conduct that amounts to purposeful availment.").

24   Accordingly, Defendant purposefully availed himself of the privileges of conducting

25   activities in California.

26   Indeed, Defendant took advantage of the benefit of these contracts by accessing

27   and using Facebook to scrape data for approximately 178 million Facebook users,

28   some of whom were located in California.  Complaint ¶ 32; *see Rankwave Co.*, 2019

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1   WL 8895237, at *7 (purposeful availment shown where plaintiff scraped data from

2   Facebook and its California-based users).  All the while, in exchange for the promises

3   Defendant breached, Plaintiff continually performed under the contract for years and

4   granted him ongoing access to its California-based services.  *Id.* ¶ 50.  The contracts

5   Defendant entered into with Plaintiff anticipated an ongoing relationship where

6   Plaintiff would continually perform the contract in California to enable Defendant's

7   ongoing access to its platform.  *See, e.g.*, *Sustainable Ranching Partners, Inc. v.*

8   *Bering Pac. Ranches Ltd.*, 2017 WL 4805576, at *5 (N.D. Cal. Oct. 24, 2017)

9   (jurisdiction exists where there are "ongoing obligations" or "continuing

10  commitments" between the parties as opposed to parties that "go their separate ways"

11  after a single sale); *Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir. 1991)

12  (jurisdiction where "[t]his is not an instance where the contract was a one-shot deal

13  that was merely negotiated and signed by one party" but rather "the contract's subject

14  would have continuing and extensive involvement with the forum"); *LeGarie v.*

15  *Nurse*, 2021 WL 5771144, at *6 (N.D. Cal. Dec. 6, 2021) (defendant purposefully

16  availed himself of California by "creat[ing] continuing relationships and obligations

17  with citizens of" California).

18          Purposeful availment exists.

19              b)      Plaintiff's Claims Arise From Defendant's Forum-Related

20                      Activities

21      The "arising from" requirement is satisfied here.  Plaintiff would not have been

22  injured "but for" Defendant's forum-related activities.  *See In re W. States Wholesale*

23  *Nat. Gas Antitrust Litig.*, 715 F.3d at 742 (describing "second prong of the specific

24  jurisdiction test as a 'but for' test").  Defendant expressly targeted California,

25  including Plaintiff, which has its principal place of business in California, and

26  Facebook users located in California, all in a manner that caused harm felt in

27  California.  Complaint ¶ 9; *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1093 (N.D. Cal.

28  2014) ("arising from" element met where "Defendant expressly targeted Yelp, a

3:21-CV-08230-LB

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT

company located in California, and Yelp suffered injury from [defendant's] schemes in this forum"); *Nissan Motor Co. v. Nissan Comput. Corp.*, 89 F. Supp. 2d 1154, 1160 (C.D. Cal. 2000) ("[D]efendant's intentional exploitation of the plaintiffs' goodwill … had the effect of injuring [plaintiff] in California.  But for the defendant's conduct, this injury would not have occurred."); *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, 2021 WL 5707741, at *4 (N.D. Cal. Oct. 21, 2021), *report and recommendation adopted*, 2021 WL 5707740 (N.D. Cal. Nov. 16, 2021) (plaintiffs' breach of contract claim arose from "defendants' U.S.-directed activities").  The "arising from" element, therefore, is satisfied.

    c)  Defendant Has Not And Cannot Show Unreasonableness

   "Because the first two requirements for exercising specific personal jurisdiction ha[ve] been established," Defendant must present a "compelling case" that the assertion of jurisdiction would be unreasonable.  *Catron*, 70 F. Supp. 3d at 1093–94.  Defendant, however, "waived his opportunity to make this showing by failing to participate in this litigation." *Id.* at 1094.  Nor could Defendant meet his heavy burden.  As stated above, Defendant specifically targeted Plaintiff, a known California company, through his scheme.  Thus, Defendant "had 'fair warning' that he might be sued in California." *Id.* (citing *Burger King*, 471 U.S. at 472).

   **4.**  **Defendant Was Properly Served**

   Because Defendant resides in Ukraine, Plaintiff initiated service through the Hague Convention.  On August 1, 2022, Plaintiff received a certificate of service from the Ukrainian Authority, noting that a court summons was delivered on February 11, 2022.  Proof of Service of Complaint.  Defendant thereafter failed to appear in court at his February 15, 2022 hearing without a valid reason and despite being "duly notified of the date, time and place of the court session scheduled." *Id.*  As a result, and in accordance with Part 6 of Article 501 of the Code of Civil Procedure of Ukraine, the "documents to be served by order of a foreign court shall be considered as served." *Id.*  Because Defendant did not respond to the Complaint by his March 4, 2022

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

13

3:21-CV-08230-LB

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1   deadline, Plaintiff requested entry of default against Defendant on August 25, 2022.

2   Request for Entry of Default.  The Clerk entered default that same day.  Clerk's

3   Notice of Entry of Default.  Consistent with the Clerk's entry of default, Defendant

4   has been properly served.

5        **B.**    **The *Eitel* Factors Weigh Heavily In Favor Of Granting Default**

6           **Judgment**

7           **1.**    **Plaintiff Will Be Prejudiced Absent Entry Of Default**

8                 **Judgment**

9       "The first *Eitel* factor considers whether the plaintiff will suffer prejudice if the

10  court denies default judgment."  *Baskin-Robbins*, 2020 WL 2616576, at *7.  Here, "if

11  default judgment isn't entered, Plaintiff will be prejudiced because it will be left

12  without a judicial remedy."  *9 Xiu*, 2021 WL 5707741, at *5.  Indeed, absent an

13  injunction to preclude Defendant's abuse of Plaintiff's platform and the sale or

14  distribution of data obtained from Facebook or Meta's Products, Plaintiff will be

15  prejudiced and continue to suffer harm.  Thus, this factor favors granting default

16  judgment.

17          **2.**    **Plaintiff's Breach Of Contract Claim Is Meritorious And Well-**

18                **Founded**

19      "The second and third *Eitel* factors require the plaintiff 'to plead facts sufficient

20  to establish and succeed upon its claims.'"  *Baskin-Robbins*, 2020 WL 2616576, at *7

21  (quoting *Naturemarket*, 694 F. Supp. 2d at 1055).  The "well-pleaded factual

22  allegations in the complaint, except those concerning damages, are deemed to have

23  been admitted by the non-responding party."  *Id.*  Therefore, the "district court is not

24  required to make detailed findings of fact."  *Id.*  For the reasons set forth below,

25  Plaintiff's breach of contract claim is meritorious and well-founded.

26      To state a breach of contract claim, Plaintiff need only show: (1) the existence

27  of a contract; (2) plaintiff's performance or excuse for non-performance; (3)

28

defendant's breach; and (4) resulting damages.  *Karimi v. Golden Gate Sch. of Law*, 361 F. Supp. 3d 956, 973 (N.D. Cal. 2019).  Plaintiff has pled all necessary elements.

*First*, valid contracts exist between Plaintiff and Defendant.  Use of Plaintiff's service is governed by the Terms to which Defendant agreed on at least twice.  Complaint ¶ 27; *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1164–67 (N.D. Cal. 2016) (Meta's user-registration process created binding contract on user).  The Terms prohibit users from accessing or collecting information in unauthorized ways, which includes collecting information in an automated way without Plaintiff's express permission.  Complaint ¶ 20; *see* Herter Decl. Ex. A, paragraph 3.  The Terms also prohibit users from doing anything unlawful, misleading, or fraudulent or facilitating or supports others in doing so.  *Id.*

*Second*, Plaintiff performed its end of the bargain by allowing Defendant access to its platform.  Complaint ¶ 50.  *Third*, Defendant breached the Terms by: (1) using automated means to access and collect data from Facebook without Plaintiff's permission; and (2) engaging in misleading conduct by using an Android emulator and phone enumeration scraping technique to communicate with Meta computers, which misrepresented to Meta who was using its services.  *Id.* ¶¶ 32, 51-52.

*Finally*, as a result of Defendant's actions, Plaintiff suffered damages.  Complaint ¶¶ 44-45, 53.  Among other things, Plaintiff expended resources to investigate, remediate, and respond to Defendant's breaching conduct.  *Id.*; *Sluchevsky*, 2020 WL 5823277, at *7 (Meta sufficiently pled damages element of contract claim based on allegation that it incurred investigation and remediation costs as a result of breach); *9 Xiu*, 2021 WL 5707741, at *5 (Meta sufficiently pled damages element of contract claim by alleging that it had to "expend time and resources to investigate" and remediate prohibited activities).  Plaintiff's breach of contract claim is well-pled.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

15

3:21-CV-08230-LB

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

### 3. The Amount Of Money At Stake Supports A Default Judgment

"Under the fourth *Eitel* factor, the Court must consider the amount of money at stake in relation to the seriousness of Defendants' conduct." *Baskin-Robbins*, 2020 WL 2616576, at *9 (citing *Eitel*, 782 F.2d at 1471–72). "[D]efault judgment may be appropriate where it is 'tailored to [the defendant's] specific misconduct.'" *Id*.

Although Plaintiff is entitled to monetary damages, Plaintiff does not seek them through this Motion. Rather, as set forth more fully below, Plaintiff seeks injunctive relief only. Accordingly, this factor strongly favors granting default judgment. *Sluchevsky*, 2020 WL 5823277, at *8 ("Where a plaintiff seeks only injunctive relief, the fourth *Eitel* factor weighs in favor of granting the plaintiff's motion.").

### 4. There Is No Dispute Of Any Material Facts

The fifth *Eitel* factor considers whether material facts are in dispute. *Baskin-Robbins*, 2020 WL 2616576, at *6. Here, none exist. "Upon the Clerk's entry of default, Defendant[] w[as] 'deemed to have admitted all well-pleaded allegations' in the complaint." *Id.* at *9. Thus, this factor favors entry of default judgment.

### 5. There Is No Evidence Of Excusable Neglect In The Record

The sixth *Eitel* factor considers whether default was entered as a result of excusable neglect by Defendant. *Baskin-Robbins*, 2020 WL 2616576, at *6. This factor favors the entry of a default judgment "where the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit." *Id*. at *9. Here, as explained above, Plaintiff properly served Defendant in accordance with the Hague Convention. Proof of Service of Complaint. Even though a court summons was delivered to Defendant on February 11, 2022, he failed to appear in court at his February 15, 2022 hearing without a valid reason and despite being "duly notified of the date, time and place of the court session scheduled." *Id.* Accordingly, "[t]here is no basis here to conclude that Defendants' default resulted from excusable neglect," and this factor strongly weighs in favor of the entry of default judgment. *Baskin-Robbins*, 2020 WL 2616576, at *9.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

### 6. There Is No Likelihood Of A Decision On The Merits

The final *Eitel* factor balances the entry of default judgment against the preference for deciding cases on the merits. *Eitel*, 782 F.2d at 1472. "A defendant's failure to answer the complaint makes a decision on the merits impractical, if not impossible." *Baskin-Robbins*, 2020 WL 2616576, at *10 (quotations omitted). Indeed, "termination of a case before hearing the merits is permissible when a defendant fails to defend an action." *Id.* Given Defendant's failure to appear, a "decision on the merits is impossible." *Id.* This factor favors the entry of default judgment.

## IV.   PLAINTIFF IS ENTITLED TO A PERMANENT INJUNCTION

"[I]t is appropriate to grant an injunction on an application for default judgment" consistent with the demands of the Complaint. *Craigslist, Inc. v. Realworks Group LLC*, 2009 WL 10692489, at *5 (N.D. Cal. Oct. 29, 2009); *see also* Fed. R. Civ. P. 54(c). Permanent injunctive relief is appropriate where: (1) the plaintiff risks suffering irreparable harm; (2) monetary remedies are inadequate to compensate for plaintiff's injury; (3) the balance of hardships favors the plaintiff; and (4) the public interest would not be disserved by an injunction. *Amazon.com, Inc. v. Expert Tech Rogers Pvt. Ltd.*, 2021 WL 4461601, at *10 (N.D. Cal. Sept. 22, 2021), *report and recommendation adopted*, 2021 WL 4896120 (N.D. Cal. Oct. 20, 2021). Those factors favor an injunction here.[3]

As to the first factor, "[n]umerous courts have found that unauthorized access of computers and the acquisition of data … constitute[s] irreparable harm." *Facebook, Inc. v. Power Ventures, Inc.*, 252 F. Supp. 3d 765, 782 (N.D. Cal. 2017). And here, Defendant's "scraping of [] data and unauthorized use of Plaintiff's platform" gives rise to irreparable injury. *Sluchevsky*, 2020 WL 5823277, at *9 ("unauthorized

---

[3] Specifically, Plaintiff seeks an order restraining Defendant from: a) accessing and using Meta's Products; and b) selling or distributing data obtained from Meta's Products, or purportedly obtained from Meta's Products. *See* Complaint, *Prayer*.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

acquisition" of data gives rise to irreparable harm); Complaint ¶¶ 51-52.  Plaintiff has suffered—and continues to suffer—irreparable harm to its reputation and goodwill as a result of Defendant's unauthorized access, illegal possession, and attempted sale of Plaintiff's data that monetary damages cannot rectify.  *Id.*; *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm.").

As to the second factor, "not only has [Plaintiff] suffered irreparable harm, it is very likely that in the absence of a permanent injunction, [Plaintiff] will suffer irreparable harm again in the future." *Power Ventures*, 252 F. Supp. 3d at 783.  Indeed, Defendant currently possesses data for approximately 178 million Facebook users.  Complaint ¶¶ 1, 32, 41.  And he has made multiple attempts to sell that data, including on December 1, 2020 and May 24, 2021.  *Id.* ¶¶ 38, 41.  Absent an injunction, there is nothing to prevent Defendant from further attempts to scrape and sell Plaintiff's data.  Monetary damages, therefore, are inadequate to compensate Plaintiff's injury.  *See Power Ventures*, 252 F. Supp. 3d at 783 (money damages inadequate where defendants "still possess … data illegally acquired from Facebook.").

As to the third factor, the balance of hardships tips sharply in Plaintiff's favor.  Enjoining Defendant's violation of the Terms presents little to no hardship on Defendant.  *Vector Media S., LLC v. Starline Tours of Hollywood, Inc.*, 2021 WL 4913488, at *7 (C.D. Cal. Aug. 4, 2021) (rejecting contention that "merely requiring [defendant] to perform under the parties' contract is unduly burdensome" and finding that "[t]he balance of hardships therefore tips in favor of [plaintiff]").  On the other hand, Defendant forced Plaintiff to incur costs to investigate and mitigate his repeated violations of the Terms.  Defendant's unauthorized possession and attempts to sell data belonging to approximately 178 million Facebook users warrants an injunction.

As to the fourth factor, the public interest would be served by an injunction. Indeed, the public has a significant interest in enjoining a suspected abuser of Plaintiff's platform and its users' privacy from accessing Facebook or Meta's Products and selling or distributing any data obtained from Facebook or Meta's Products. *Stackla, Inc. v. Facebook Inc.*, 2019 WL 4738288, at *6 (N.D. Cal. Sept. 27, 2019) ("[Meta]'s ability to decisively police the integrity of its platforms is without question a pressing public interest.  In particular, the public has a strong interest in the integrity of [Meta]'s platforms, [Meta]'s policing of those platforms for abuses, and [Meta]'s protection of its users' privacy.").  The requested injunction is warranted.

## V.   CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's Motion and enter the proposed default judgment in Plaintiff's favor and permanent injunction filed concurrently herewith.

Dated:  October 21, 2022

HUNTON ANDREWS KURTH LLP

By:   */s/ Ann Marie Mortimer*
Ann Marie Mortimer
Jason J. Kim
Brandon Marvisi
Attorneys for Plaintiff
Meta Platforms, Inc. (f/k/a Facebook, Inc.)

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT