1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

San Francisco Division

11

FACEBOOK, INC.,

Case No. 21-cv-08230-LB

12

Plaintiff,

**ORDER FOR REASSIGNMENT; REPORT AND RECOMMENDATION TO GRANT MOTION FOR DEFAULT JUDGMENT**

13

v.

14

ALEXANDER ALEXANDROVICH SOLONCHENKO,

Re: ECF No. 23

15
16

Defendant.

17

**INTRODUCTION**

18

Plaintiff Meta Platforms, Inc. — formerly known as Facebook, Inc. — sued defendant

19

Alexander Alexandrovich Solonchenko for breach of contract on the ground that he violated

20

Meta's terms of service by scraping data associated with approximately 178 million users and then

21

selling it. Meta served him in Ukraine via the Hague Convention. He did not appear or defend the

22

case. The Clerk of Court entered his default, and Meta moved for default judgment in the form of

23

an injunction. The court directs the Clerk of Court to reassign the case to a district judge and

24

recommends entry of default judgment in the form of the proposed judgment at ECF No. 23-2.

25
26

**STATEMENT**

27

Facebook, one of Meta's products, is "a social networking website and mobile application that

28

enables its users to create their own personal profiles and connect with each other on their personal

ORDER; R.& R. – No. 21-cv-08230-LB

United States District Court
Northern District of California

computers and mobile devices."[1] Facebook Messenger is a messaging app with direct messaging, video and voice calls, and filesharing of audio, photo, and video files. Between June 2015 and September 2019, Messenger had a feature called "Contact Importer Matching Function" that allowed Facebook users to use their contacts on mobile devices and identify the contacts on Facebook. It worked only if the user's privacy settings permitted others to search for the user by phone number. In September 2019, Facebook removed the Messenger feature that returned one-to-one lists of matched phone numbers.[2]

This lawsuit involves "phone number enumeration scraping," which involves autogenerating lists of phone numbers and uploading the lists to websites with phone-lookup features to scrape account information.[3] Here, a computer program autogenerated phone numbers and used the numbers to create files on simulated mobile devices (also known as Android or Apple iOS emulators) that mimicked real mobile devices. The simulated devices uploaded the autogenerated contacts to Facebook's computers via the Messenger Contact Importer. If the autogenerated phone number matched a real phone number, and the user's privacy settings allowed "everyone" to search for the user by phone number, then that user's Facebook ID and name could be scraped.[4] Starting from at least January 2018 through September 2019, the defendant scraped 178 million users' data without permission.[5]

The defendant created Facebook accounts on January 7, 2015, and August 31, 2020, and he created and controlled two Facebook apps between October 12, 2019, and October 13, 2021. He created and controlled at least five Instagram accounts (another Meta product) between January 18, 2015, and October 13, 2021.[6] For each account, he agreed — like all Facebook users — to Facebook's Terms of Service, which prohibit users from (1) doing "anything unlawful,

---

[1] Compl. – ECF No. 1 at 4 (¶ 12). Citations refer to the Electronic Case File (ECF); pinpoint citations are to the ECF-generated numbers at the top of documents.

[2] *Id.* at 5–6 (¶¶ 16–17).

[3] *Id.* at 6–7 (¶ 25).

[4] *Id.* at 7 (¶ 26).

[5] *Id.* at 9 (¶ 32).

[6] *Id.* at 7–8 (¶¶ 27–30).

United States District Court
Northern District of California

misleading, discriminatory or fraudulent" and (2) accessing or collecting data from Meta's products using automated means.[7] By scraping data, the defendant violated the terms of service.[8]

Meta apparently found out about the scheme because the defendant joined RaidForums, an online marketplace that can be used to sell scraped, stolen, and leaked data.[9] On December 1, 2020, he posted on RaidForums, offering to sell data that he said that he scraped from Facebook in 2018. He promoted the sale between December 3, 2020, and January 3, 2021. On May 24, 2021, he offered to sell a dataset of 180 million Facebook users, which is the data that he scraped of primarily U.S.-based users. He sold the data in May 2021. He also has stolen and sold data from Ukraine's largest commercial bank, Ukraine's largest private-delivery service, and a French data-analytics company.[10]

After discovering that the defendant scraped data, Meta disabled his Facebook and Instagram accounts and revoked his access to Facebook and other Meta products.[11]

The defendant resides in Ukraine.[12] Meta served him through the Hague Convention. On August 1, 2022, the Ukrainian Authority notified Meta that it served the defendant on February 11, 2022, with a summons to appear on February 15, 2022, at 2:00 p.m. in the district court in Kirovograd, Ukraine. The defendant did not appear.[13] He did not answer the complaint by the March 4, 2022, deadline or otherwise appear or defend this lawsuit.[14] Meta moved for, and the Clerk entered, the defendant's default.[15] Meta moved for default judgment, seeking a permanent

United States District Court<br>Northern District of California

---

[7] *Id.* at 6 (¶¶ 18–24) (quoting the terms of service).

[8] *Id.* at 14–15 (¶¶ 51–52).

[9] *Id.* at 9 (¶ 31); *Id*. at 11 (¶ 38); *Id*. at 13 (¶ 41).

[10] *Id.* at 2 (¶ 3), 10–13 (¶¶ 35–41).

[11] *Id*. at 14 (¶ 43).

[12] *Id.* at 2 (¶ 5).

[13] Certificate of Serv. – ECF No. 18.

[14] Mot. – ECF No. 23 at 13.

[15] *Id.* at 8; Clerk's Notice – ECF No. 20.

injunction to restrain the defendant from using Meta's products or selling its data.[16] The court held a hearing on December 8, 2022. The defendant did not appear.

## ANALYSIS

### 1. Jurisdiction

Before entering default judgment, a court must determine whether it has jurisdiction over the action and personal jurisdiction over the defendant. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

#### 1.1 Diversity Jurisdiction

The court has diversity jurisdiction because the parties are diverse (the plaintiff is in Ukraine, and Meta is a Delaware corporation headquartered in Menlo Park, California), and the amount in controversy exceeds $75,000.[17] 28 U.S.C. § 1332(a).

#### 1.2 Personal Jurisdiction

Facebook advances two grounds for personal jurisdiction: the forum-selection clause in its terms of service and the defendant's contacts with the forum.

The defendant agreed to terms of service with the following forum-selection clause:

> If you are a consumer, the laws of the country in which you reside will apply to any claim, cause of action, or dispute you have against us that arises out of or relates to these Terms or the Facebook Products, and you may resolve your claim in any competent court in that country that has jurisdiction over the claim. In all other cases, you agree that the claim must be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County. You also agree that you submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim, and that the laws of the State of California will govern these Terms and any claim, without regard to conflict of law provisions.[18]

Forum-selection clauses are consent to personal jurisdiction unless the party opposing the clause "clearly shows 'that enforcement would be unreasonable or unjust, or that the clause was invalid as fraud or overreaching.'" *Facebook, Inc. v. Sluchevsky*, No. 19-cv-01277-JSC, 2020 WL 5823277, at *2 (N.D. Cal. Aug. 28, 2020) (quoting *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858

---

[16] Mot. – ECF No. 23 & Proposed Default J. – ECF No. 23-2.

[17] Compl. – ECF No. 1 at 2 (¶¶ 4–5), 4 (¶ 7), 14 (¶ 45), and 15 (¶ 53).

[18] Herter Decl., Ex. A – ECF No. 23-1 at 9–10.

United States District Court
Northern District of California

F.2d 509, 512 (9th Cir. 1988)), *R. & R. adopted*, No. 19-cv-01277-YGR, 2020 WL 5816578 (N.D. Cal. Sept. 30, 2020). Meta points to cases where courts in this district have found personal jurisdiction based on Facebook's forum-selection clause. *Id.* (collecting cases); *accord Facebook, Inc. v. ILikeAd Media Int'l Co. Ltd.*, No. 19-cv-07971-SK, 2022 WL 2289064, at *3 (N.D. Cal. Feb. 1, 2022), *R. &R. adopted as modified,* No. 19-cv-07971-JST, 2022 WL 2289058 (N.D. Cal. Mar. 15, 2022) (enforcing similar forum-selection clause). Other courts reached a different result on an earlier version of the clause, primarily on the ground that was ambiguous. *Facebook, Inc. v. Sahinturk*, No. 20-cv-08153-JSC, 2022 WL 1304471, at *3 (N.D. Cal. May 2, 2022) (collecting and analyzing cases, distinguishing *Sluchevsky*, and declining to enforce similar forum-selection clause); *Facebook, Inc. v. Rankwave Co.*, No. 19-cv-03738-JST, 2019 WL 8895237, at *3–4 (N.D. Cal. Nov. 14, 2019) (declining to enforce similar forum-selection clause).

The forum-selection clause here is an updated clause implemented by Meta to address the concerns in *Rankwave* and *Sahinturk*. The cases involved the word "claim," which the courts construed against Meta. *Rankwave*, 2018 WL 8895237, at *4; *Sahinturk*, 2022 WL 1304471, at *3. The updated forum-selection clause removes the parenthetical that created the defined term claim. The clause now unambiguously reflects the defendant's consent to personal jurisdiction.

Jurisdiction also exists independently under the traditional jurisdictional analysis.

Where there is no federal statute governing personal jurisdiction, the district court applies the law of the state where the district court sits. Fed. R. Civ. P. 4(k)(1)(A); *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). "Because 'California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution,' [a court's] inquiry centers on whether exercising jurisdiction comports with due process." *Picot*, 780 F.3d at 1211 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)); *see* Cal. Civ. Proc. Code § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States"); *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154–55 (9th Cir. 2006) (analyzing California and federal long-arm statutes). A court may exercise personal jurisdiction over a defendant consistent with due process only if the defendant has "certain minimum contacts" with

United States District Court
Northern District of California

United States District Court
Northern District of California

1    the relevant forum "such that the maintenance of the suit does not offend 'traditional notions of

2    fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

3         There are "two types of personal jurisdiction: general and specific." *Bristol-Myers Squibb Co.

4    v. Super. Ct.*, 137 S. Ct. 1773, 1779–80 (2017) (cleaned up). The plaintiff asserts specific

5    jurisdiction.[19]

6         "In order for a state court to exercise specific jurisdiction, the suit must arise out of or relate to

7    the defendant's contacts with the forum." *Id.* at 1780 (cleaned up). "In other words, there must be an

8    affiliation between the forum and the underlying controversy, principally, an activity or an

9    occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.*

10   "For this reason, specific jurisdiction is confined to adjudication of issues deriving from, or

11   connected with, the very controversy that establishes jurisdiction." *Id.* The relevant forum contacts

12   are those that occurred at the time of the wrongful acts that are the subject of the suit. *Steel v.

13   United States*, 813 F.2d 1545, 1549 (9th Cir. 1987) ("As a matter of due process, the determination

14   of amenability to suit takes place at the time of the relevant contacts. . . . [O]ne cannot defeat

15   personal jurisdiction by a move away from the state in which the underlying events took place.").

16        The Ninth Circuit analyzes specific jurisdiction under a three-prong test:

17        (1) The non-resident defendant must purposefully direct his activities or consummate some
          transaction with the forum or resident thereof; or perform some act by which he purposefully
18        avails himself of the privilege of conducting activities in the forum, thereby invoking the
          benefits and protections of its laws;

19
          (2) the claim must be one which arises out of or relates to the defendant's forum-related
20        activities; and

21        (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it
          must be reasonable.
22

23   *Picot*, 780 F.3d at 1211. "The plaintiff has the burden of proving the first two prongs." *Id.* at

24   1211–12. "If he does so, the burden shifts to the defendant to set forth a compelling case that the

25   exercise of jurisdiction would not be reasonable." *Id.* at 1212 (cleaned up).

26

27

28   _____
     [19] Mot. – ECF No. 23 at 16–20.

### 1.2.1  Prong One: Purposeful Availment and Purposeful Direction

The plaintiff may satisfy the first prong by "demonstrating that the defendant either purposefully availed itself of the privilege of conducting activities in the forum or purposefully directed its activities at the forum. *Washington Shoe Co. v. A–Z Sporting Goods, Inc.*, 704 F.3d 668, 672 (9th Cir. 2012), *abrogated on other grounds by Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064 (9th Cir. 2017); *accord Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) ("or by some combination thereof"). Although the Ninth Circuit has "sometimes used these two terms in shorthand fashion as a single concept, they are, in fact, two distinct concepts." *Washington Shoe Co.*, 704 F.3d at 672 (cleaned up).

For prong one, courts apply a "purposeful availment" analysis in suits sounding in contract or involving business transactions and a "purposeful direction" analysis (also known as the "effects test") in suits sounding in tort. *Id.*; *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The claim here is a contract claim; thus, the plaintiff asserts purposeful availment.[20] The conduct also sounds in tort, and certainly the defendant directed his conduct here. In cases involving similar conduct, courts have found prong one satisfied.

"To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (cleaned up). "A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802; *cf. Picot*, 780 F.3d at 1212 (a contract alone does not automatically establish minimum contacts); *Long v. Authentic Athletix LLC*, No. 16-cv-03129-JSC, 2016 WL 6024591, at *3 (N.D. Cal. Oct. 14, 2016), *aff'd,* 811 F. App'x 400 (9th Cir. 2020) ("A contract is only an intermediate step that connects prior negotiations with future consequences, the real object of a business transaction").

---

[20] *Id*. at 17– 19.

Courts in this district have held that creating Facebook accounts and engaging in conduct like the conduct here is purposeful availment. *See, e.g.*, *Sluchevsky*, 2020 WL 5823277, at *3 (creation and use of Facebook accounts and their assent to the terms of service, including choice-of-law provisions); *Rankwave*, 2019 WL 8895237, at *7 (defendant scraped data from Facebook and its California-based users). The similar conduct in those cases also gave rise to tort claims. *See, e.g.*, *Sahinturk*, 2022 WL 1304471 at *5 (but for the defendant's decision to scrape the plaintiffs' server for content, the plaintiffs would not expend resources in California to investigate and remediate). The cases thus are useful for assessing personal jurisdiction. In tort cases, courts in the Ninth Circuit "typically inquire whether a defendant purposefully directed his activities at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Washington Shoe Co.*, 704 F.3d at 672–73 (cleaned up). Under the effects test, purposeful direction exists when a defendant commits an act outside the forum that was intended to and does in fact cause injury in the forum, meaning, the defendant must (1) commit an intentional act (2) expressly aimed at the forum (3) that causes harm that the defendant knows is likely to be suffered in the forum. *Calder v. Jones*, 465 U.S. 783, 788–89 (1984); *Washington Shoe Co.*, 704 F.3d at 679. This case — while a breach-of-contract case — bleeds into the tort purposeful-direction inquiry because it involves intentional conduct expressly aimed at the forum that causes harm likely to be suffered here.

In sum, prong one is satisfied.

### 1.2.2  Prong 2: Forum-Related Activities

The next issue is whether the plaintiff's contract claim arises out of or is related to the defendant's contacts with the forum. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021); *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 983 (9th Cir. 2021). "In other words, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb*, 137 S. Ct. at 1780 (cleaned up)

Ninth Circuit precedents before *Ford* required a showing of but-for causation. *Ayla*, 11 F.4th at 983 n.5. *Ford* now forecloses the exclusive use of that narrower test. *Id.* In *Ford*, "the Supreme

United States District Court
Northern District of California

1   Court emphasized that a strict causal relationship is not required." *Id.* (citing *Ford*, 141 S. Ct. at

2   1026). "None of our precedents has suggested that only a strict causal relationship between the

3   defendant's in-state activity and the litigation will do." *Ford*, 141 S. Ct. at 1026. Thus, the earlier

4   precedents now "permit but do not require a showing of but-for causation to satisfy the nexus

5   requirement." *Ayla*, 11 F.4th at 983 n.5.

6       For the reasons discussed in the previous section, the defendant's forum contacts satisfy this

7   element. The defendant expressly targeted Meta in the district in a manner that caused harm here.

8           ### 1.2.3  Prong 3: Reasonableness of the Exercise of Jurisdiction

9       Because the plaintiff established the first two prongs, the burden shifts to the defendant to

10  establish "a compelling case that the exercise of jurisdiction would not be reasonable." *Picot*, 780

11  F.3d at 1211–12. By defaulting and not participating in the litigation, the defendant has waived his

12  opportunity to make this showing. *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1084 (N.D. Cal. 2014).

13

14           ## 2.  Service

15      Federal Rule of Civil Procedure 4(f)(1) authorizes service of process on an individual in a

16  foreign country "by any internationally agreed means of service that is reasonably calculated to

17  give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial

18  and Extrajudicial Documents. . . ." The Hague Convention requires plaintiffs to send requests for

19  service of process to the central authority of the defendant's home country. *Sluchevsky*, 2020 WL

20  5823277, at *4 (citing Hague Convention, art. III).

21      Meta initiated service here through the Hague Convention. On August 1, 2022, the Ukrainian

22  Authority sent a certificate that (1) it served the defendant on February 11, 2022, with a summons

23  to appear in the district court in Kirovograd, Ukraine, on February 15, 2022, at 2:00 p.m., (2) the

24  defendant did not appear, and (3) according to Ukraine Code of Civil Procedure Article 501, part

25  6, the "documents to be served by order of a foreign court shall be considered as served."[21] Meta

26  properly served the defendant.

27

28  [21] Certificate of Serv. – ECF No. 18.

United States District Court
Northern District of California

### 3.   Default-Judgment Analysis

Under Federal Rule of Civil Procedure 55(b)(2), a plaintiff may apply to the district court for — and the court may grant — a default judgment against a defendant who failed to plead or otherwise defend an action. After entry of default, well-pleaded allegations in the complaint regarding liability and entry of default are taken as true except as to damages, which are not at issue here. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). The court need not make detailed findings of fact. *Combs*, 285 F.3d at 906. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

"A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002). The decision to grant or deny a default judgment lies within the court's discretion. *Draper v. Coombs*, 792 F.2d 915, 924–25 (9th Cir. 1986).

In deciding whether to enter a default judgment, the court considers seven factors:

> (1) [T]he possibility of prejudice to the plaintiff; (2) the merits of [the] plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). "Of all the Eitel factors, courts often consider the second and third factors to be the most important." *Mohanna v. Bank of Am., N.A.*, No. 16-cv-01033-HSG, 2017 WL 976015, at *3 (N.D. Cal. Mar. 14, 2017) (cleaned up).

The *Eitel* factors favor entry of default judgment against the defendant.

### 3.1   Possibility of Prejudice to the Plaintiff (First *Eitel* Factor)

The first *Eitel* factor is whether the plaintiff would suffer prejudice if default judgment is not entered, and whether that potential prejudice to the plaintiff weighs in favor of granting a default judgment. *Eitel*, 782 F.2d at 1471; *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1054 (N.D. Cal. 2010). Given the defendant's unwillingness to litigate, the plaintiff is without recourse to obtain the appropriate injunction to prevent abuse of the platform and the sale or distribution of data. This factor weighs in favor of granting default judgment.

1

### 3.2     The Merits and Sufficiency of the Claim (Second and Third *Eitel* Factors)

The second and third *Eitel* factors consider the merits of the claims and the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471–72. "The Ninth Circuit has suggested that [these factors] . . . require that [the] plaintiffs' allegations state a claim on which the [plaintiffs] may recover." *Kloepping v. Fireman's Fund*, No. 94-cv-02684-TEH, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)). The allegations — taken as true — support a claim for breach of contract.

Under California law, the elements of a breach of contract claim are (1) a contract, (2) the plaintiff's performance or excuse for nonperformance, (3) the defendant's breach, and (4) damages to the plaintiff. *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). The parties had a contract because the defendant created a Facebook account, accessed Facebook's services, and agreed to the terms of service. The plaintiff performed by allowing the defendant to use the platform. The defendant breached the terms of service by scraping the data, and the plaintiff suffered injury from the loss and sale of its data. *Sluchevsky*, 2020 WL 5823277, at *7 (making a similar analysis); *Facebook, Inc. v. Grunin*, 77 F. Supp. 3d 965, 970 (N.D. Cal. 2015) (Grunin agreed to Facebook's terms when he created a Facebook account and accessed Facebook's services); *Yelp*, 70 F. Supp. 3d at 1099 ("the Yelp terms of service is a contract"); *Craigslist*, 694 F. Supp. 2d at 1059 (Craigslist's terms of use were a valid contract between it and all users, including the defendants).

The second and third factors weigh in favor of a default judgment.

### 3.3     Sum of Money at Stake (Fourth *Eitel* Factor)

The fourth *Eitel* factor considers the amount of money at stake in the litigation. When the money is substantial or unreasonable, default judgment is discouraged. *See Eitel*, 782 F.2d at 1472 (a three-million-dollar judgment weighed against entering default judgment).

Meta seeks only non-monetary relief. Thus, this factor does not weigh against default judgment.

### 3.4     Factual Dispute or Excusable Neglect (Fifth and Sixth *Eitel* Factors)

The fifth and sixth *Eitel* factors consider the possibility of factual disputes and whether a defendant's failure to respond was likely due to excusable neglect. *Eitel*, 782 F.2d at 1471–72. In

*Eitel*, there was both a factual dispute and excusable neglect. *Id.* at 1472. There, the defendant disputed material facts in the (untimely) answer and counterclaim. *Id.* Moreover, the defendant's response was late because the parties had previously agreed to "what appeared to be a final settlement agreement" and "[the defendant] reasonably believed that the litigation was at an end[.]" *Id.* Because of his reasonable reliance and prompt response when the agreement dissolved, there was excusable neglect for the defendant's untimely response. *Id.*

There is no evidence of a factual dispute or excusable neglect.

### 3.5    The Strong Policy Favoring Decisions on the Merits (Seventh *Eitel* Factor)

The seventh *Eitel* factor requires considering the strong policy favoring decisions on the merits. *Eitel*, 782 F.2d at 1472. Although default judgment is disfavored, "[t]he very fact that F.R.C.P. 55(b) exists shows that this preference, standing alone, is not dispositive." *Kloepping*, 1996 WL 75314, at *3. "While the Federal Rules do favor decisions on the merits, they also frequently permit termination of cases before the court reaches the merits[,] . . . [as] when a party fails to defend against an action[.]" *Id.*

Litigation on the merits is not possible. This factor supports default judgment.

*    *    *

In sum, the *Eitel* factors support default judgment.

### 4.    Relief Sought — Permanent Injunction

Meta asks for an injunction restraining the defendant from (1) accessing or using Facebook and Meta's products, and (2) selling or distributing data of any kind obtained from Meta and its products.[22] The issue is whether the plaintiff is entitled to injunctive relief and, if so, whether the requested relief is narrowly tailored to the alleged wrongdoing. An injunction is appropriate.

To determine whether injunctive relief is appropriate in a particular case, "district courts should apply 'traditional equitable principles. . . .'" *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006). Those principles require a plaintiff to demonstrate the following:

---

[22] Proposed Default J.– ECF No. 23-2 at 2.

ORDER; R. & R. – No. 21-cv-08230-LB                    12

1    "(1) that it has suffered an irreparable injury; (2) that remedies available at law . . . are inadequate

2    to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff

3    and defendant, a remedy in equity is warranted; and (4) that the public interest would not be

4    disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391

5    (2006). Under Federal Rule of Civil Procedure 65(d), "[e]very order granting an injunction must:

6    (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable

7    detail . . . the act or acts restrained or required." Generally, an injunction must be narrowly tailored

8    to remedy only the specific harms shown by a plaintiff, rather than to enjoin all possible breaches

9    of the law. *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004).

10        Based on the analysis in the earlier sections, the factors support an injunction.

11        In similar circumstances, courts have granted similar injunctions. *See, e.g.*, *Sluchevsky*, 2020

12    WL 5823277 at *10; *Facebook, Inc. v. Power Ventures, Inc.*, 252 F. Supp. 3d 765, 785–86 (N.D.

13    Cal. 2017), *aff'd*, 749 F. App'x 557 (9th Cir. 2019). The harm is irreparable. *Sluchevsky*, 2020 WL

14    5823277 at *9 ("unauthorized acquisition" of data is irreparable harm); *Stuhlbarg Int'l Sales Co.*

15    *v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) ("evidence of threatened loss of

16    prospective customers or goodwill certainly supports a finding of the possibility of irreparable

17    harm"). Money damages will not compensate for the injuries in the same way because an

18    injunction addresses future data scrapes and sale of data. *Power Ventures*, 252 F. Supp. 3d at

19    783–84 (money damages inadequate where defendants still possess data illegally acquired from

20    Facebook). The balance of hardship tips in Meta's favor: the conduct forced it to investigate and

21    mitigate the defendant's violation of the terms of service, and there is no discernable hardship to

22    the defendant. The public interest is served by an injunction addressing a data scrape, considering

23    the resulting privacy issues, the integrity of the platform, and the protection of user data. *Stackla,*

24    *Inc. v. Facebook Inc.*, No. 19-cv-05849-PJH, 2019 WL 4738288, at *6 (N.D. Cal. Sept. 27, 2019)

25    (the public has a strong interest in the integrity of Facebook's platforms, Facebook's policing of

26    those platforms for abuses, and Facebook's protection of its users' privacy).

27

28

**CONCLUSION**

The court directs the Clerk of Court to reassign the case to a district judge and recommends that the newly assigned judge grant default judgment in the form of Meta's proposed judgment at ECF No. 23-2, which is attached.

Any party may file objections to this report and recommendation with the district judge within fourteen days after being served with a copy. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); N.D. Cal. Civ. L.R. 72. Failure to file an objection may waive the right to review the issue in the district court.

**IT IS SO ORDERED.**

Dated: December 29, 2022

_____
LAUREL BEELER
United States Magistrate Judge

ORDER; R. & R. – No. 21-cv-08230-LB                    14